Good morning, Your Honors. Good morning. May it please the Court. My name is Barry Morris, and I represent the petitioner-appellant, Tarrance Vickers. It is clearly established that custody credits are subject to due process protection. That's the wolf. This is not the full plan of plea of due process rights that we associate with the criminal trial. This is merely the requirement that any action be taken based on some evidence. Counsel, let me, because you don't have very much time and this is a complex construction issue, what we're talking about here, is this mandatory? Is there a liberty interest, right? Isn't that what we're talking about? Well, the Supreme Court has moved away from mandatory in Sandon, but this is a liberty interest because the custody credits affect the amount of time that the person will serve in custody. You think that alone is enough to make it a liberty interest? That's what Wolf said. It doesn't take much more than that, but that's established, that custody credits are protected by the due process court. Right. But the question is, is there a liberty interest in it such that he can get the kind of relief he's seeking? Well, the liberty interest you see, custody credits in California are a uniform scheme of both granting custody credits, taking them away, and if you get the credits taken away, if you're a good boy for another or a good prisoner for another year, they can be restored. So it's all part of a unified scheme. And if custody credits taken away implicate the due process clause, there's no principal distinction between taking them away and in effect suspending them based upon the possibility that you may be compliant with the rules and regulations of the prison for a year, in which case you get them back. So I don't see the distinction. I don't think there is a distinction. Well, it seems to me you're just assuming away the problem that at least I'm wrestling with. You've got a district court case that's exactly the opposite of what you're saying. You mean the district court case in here? Yeah. Well, other ones, too. But the real one, what I'm worried about, we have cases that kind of go both ways depending on how they construe the regulations. Some regulations say may, some say shall. The question is, is it a requirement? And we've got this is a kind of an equipoise thing. Well, the regulations say shall, you know, be restored. But the statute says may. Yeah. Well, the regulations in the statute must be viewed in pari materia. And the regulations in California have the same force as the statute. The regulations are more specific than the statute because the regulations are generated through the particular administrative agency or institution itself rather than the legislature. But they're, in effect, a refinement of what the statute provides. And well, as you pointed out earlier, it seems to me that the Supreme Court moved away from that view of things in Sandin. And I'm looking at the Ninth Circuit case, McQuillan versus Duncan, 306 F. 3rd, 895, where the Ninth Circuit says, with respect to Sandin, the Sandin's holding pertained to internal prison disciplinary regulations. And Sandin's holding was that the mandatory view that was set forth in, I guess it was limited and would not apply to internal prison regulations. So I think this is — I think it's a question of whether the statute is mandatory rather than whether the regulations are mandatory. Well, I don't know that the — that Greenholz or Sandin distinguished between a statute and a regulation as being the subject of a due process protection. I mean, the point here is that credits are subject to due process protection. The question is whether or not it makes any principal distinction between taking away credits and providing that they can be restored if the prisoner behaves himself. Well, but, I mean, as a matter of logic, I agree with you that it makes perfectly good sense to try to encourage prisoners to behave well so they can get previously deprived good-time credits back. That makes perfectly good sense. But there seem to be a lot of exceptions, and the — and the administrator in question can say, yeah, but this and that and the other. And the question is whether it is a mandatory requirement that they be restored. That, to me, is the issue in this case. Well, the mandatory — first of all, I guess I'm missing something here. Sandin said we're moving away from that as a distinction. I mean, it doesn't — first of all, it doesn't seem to make a lot of sense to — to say whether or not something is covered by the due process clause as to whether or not it's mandatory or voluntary, because even if it's — even if it's voluntary, there's abuse of discretion, which is also within the penumbra of the due process clause. But the issue here is not — is simply whether or not Wolf clearly established that credits are covered by the due process clause, which would include the suspension of those credits based on bad behavior and the restoration based on good behavior. It makes no sense to divide the baby here. It's all one issue, one concept, one thing that is subject to the due process clause protections. Well, I'm not sure I understand what due process violation has occurred if the — the code says that on a — completion of a disciplinary free period, an inmate may — may apply for credit restoration, a restoration hearing shall be conducted, and credit shall be restored at the hearing unless it is determined that the inmate has a disciplinary infraction, refused or failed to perform its work, et cetera, et cetera. So you've got the hearing. Right. And there was a determination that you — that there had been an infraction because of the — what, the pornography that — Well, the — the lower court never got to that issue. The lower court issue dismissed it. Well, I understand. But I'm asking you, what — Well, some evidence. What in there was that — Well, this is a perfect case for that. Some evidence. The evidence that there was there all pointed to the fellow who had a booth next to my client who admitted creating the pornography. There was no evidence against my client. As I — as I indicated in my brief, I thought as a trial lawyer that some evidence was a meaningless standard because there's always some evidence. It may not be good enough, may not be persuasive, but there's a — but here, there was zero evidence. It was just the — all the evidence pointed to the other person, and the officer said he believed that my client was involved, too, but there's no evidence of that. And this is what due process would protect, would say you have to have some evidence. An officer's belief is not evidence. It is his opinion. And with that, I'll reserve the 2 minutes and 2 seconds. All right. Very well. Thank you. Very well. Good morning. Good morning. May it please the Court. My name is Christalee Pollard. I'm from the Attorney General's office, and I represent a Pelley-respondent in Sexton. As this Court is aware, this is a Federal habeas petition for a State prisoner, so it's governed by AEDPA. And under AEDPA, this Court looks to whether or not there's clearly established Federal law. There is no clearly established Federal law in this case. While Mr. Vickers relies on Wolf and Hill, those concern cases where the inmate possessed the credits. He had a right to them. He owned them. He possessed them. And the State was trying to take them away. This is different. Here, Mr. Vickers only had the possibility of possibly getting credits back. He'd already lost those credits. They were gone. So he was seeking to get them, the glossary. He says that under the regulation, he had a right, because the regulation is used as the term shall. So he had a right to get those credits back under the very terms of the regulation unless one of the exceptions was satisfied. Yes, Your Honor. The regulations provide an opportunity for a prisoner to reacquire those credits back, but it's still just a possibility. Until he fulfills the ---- I thought that the regulations say, quote, credit shall be restored at the consideration hearing unless it is determined that the inmate has, since the disciplinary infraction leading to the credit forfeiture, and then there are various things, refused to perform work, et cetera, et cetera. So if the regulation is governing here, it doesn't leave any discretion. It says shall be restored unless one of those exceptions is met. Yes, Your Honor. But it's still not certain. It's not he's not at the ---- until he fulfills ---- What does the word shall mean? Does it mean that the prison authorities have the right to say, you know, the regulation says we shall do this, but the heck with that. We don't feel like it today, so we won't do it. Your Honor, it's shall if certain conditions are met. Yes. So what ---- this goes to the question that was raised by your adversary at the end of his argument. What was the evidence that he had possessed pornography or the like? Your Honor, whether or not there's some evidence supporting that disciplinary decision is not one of the conditions that are necessary before an inmate can get those credits back. Having a disciplinary free period or other conditions must be satisfied before an inmate is entitled to have those lost credits. At the time that he was at the disciplinary hearing, he had no right to those lost credits. No, I understand that argument on the liberty interest analysis that Judge Smith was referring to, but I'm asking a more narrow question. Is it your position that if he satisfies the regulation, the prison authorities still have discretion to deny him restoration of his credits? No, Your Honor. Okay. Then my question is, in what way did he not satisfy the conditions? He did not satisfy the disciplinary ---- the conditions because he incurred a disciplinary infraction. And the question the Court is confronting is not whether this Court finds that there's a liberty interest. The question is whether the Supreme Court, confronted with this same scenario, has found that there is a liberty interest. I understand that, but I'm still asking, and I'm pressing you, because he raised it, and I think it's relevant. What evidence, if any, was there that he had not satisfied the conditions that the regulation prescribed as the only exceptions to the restoration of credits? The condition is, is that the inmate must comply with the condition that they not incur any disciplinary infractions within a set period of time. And what was the disciplinary infraction that he incurred? It was the second disciplinary infraction where he was found to be in possession of pornography. And what was the evidence of that? The evidence was there was information on the computer, and that he was a user of the computer. We seem to have a disagreement about the fact, but let's get back to the law issue for a second here. Your opponent says basically that the mandatory language issue is just not even a factor. But under AEDPA, as you point out, it seems to be, and I want to ask you, does the government agree that under Greenholz and Thompson, that the mandatory language rule that we've all been talking about, doesn't that establish the law for purposes of AEDPA? Under AEDPA, the Supreme Court in Sandon turned away from the mandatory language task that had previously been the focus, and instead looked at the nature of the right that was at issue. And in this case, Mr. Vickers did not possess those credits. This was simply the possibility of having those credits restored. And as the Supreme Court noted in Greenholz, there's a difference between losing what someone has and losing the possibility of getting what someone wants. And understanding from your perspective, what did the Supreme Court say is the new rule? If it isn't mandatory, how are we to evaluate whether there is a liberty interest here? The court would look at whether or not there is a, if the action imposes an atypical and significant hardship on the prisoner. And there is no Supreme Court authority that has held that depriving a prisoner of the possibility of having lost credits restored, because there is no Supreme Court authority holding that there is a liberty interest in the possibility of having lost credits restored, there is no clearly established law, and this Court cannot grant relief under AEDPA. The Supreme Court has held in Greenholz and in Roth that there has to be more than just the want or the desire or the possibility of having something returned to you or given to you. So from my original understanding of the facts was that the pornography incident, if I can call it that, was what caused the loss of the good time credits in the first place. The pornography — That's right. No, Your Honor. There was a first disciplinary decision that resulted in the loss, in lost credits. Okay. So that was a separate — That was a separate decision, and Mr. Vickers does not challenge his due process interests in that. Then there was a second disciplinary decision where no credits were lost. They did not take away any of Mr. Vickers' credits in that second disciplinary — But it was the condition precedent to getting a restoration from your perspective. Yes, Your Honor. Okay. And because there is no Supreme Court authority that has considered this scenario, there's no clearly established law, just as there was no clearly established law in Ms. Lawton where there was a — it was in the same general category of type of conduct, but there was a distinction between State-sponsored activity and spectator or public activity, because there was that distinction, just as there's a distinction here between credits a person actually has in their hand and the possibility of getting something back. Because there is a difference, and there is no Supreme Court authority on whether or not you can get credits back, there's no clearly established law in EDPA bars relief. Unless the Court has further questions? Other questions? I think not. Thank you very much. Thank you. I want to address three things, and then I'll answer whatever questions the Court has. Greenhold's dealt with parole. That's why the statement in there that you can't always get what you want. Second, the nature of the right. That's already been decided by the Supreme Court. Credits are protected by due process. All right. Well, let's say we all agree with you. In this instance, your opponent says that the good time credits were taken away based on an earlier infraction. Right. At the time your client was trying to get them restored, there was another problem, and that was the pornography. Right. And that's why you didn't get them back. Do you agree with that? I agree. OK. So if that's the case, then, you're really not talking about anything that's mandatory. You're saying, is the regulation that gives him the possibility of getting it back a due process violation? It's not a possibility. It's a certainty. It says, if you could, the regulation says, if you satisfy the following requirements, you get your credits back. If you say discipline-free, if it's not a major incident involving a lot of contraband, there's a bunch of them there. But assuming you pass all that, you get them back. So you're saying that the pornography was not enough to stop him from getting it back? Well, first of all, that's the other thing. There was nothing on his computer. There was zero evidence that he possessed pornography, had anything to do with the pornography. That was done by the guy who was sitting in the same area, but not him. And the guy admitted it. That's what you're saying. That's what the reports say. The report says that. I wasn't there. So I can't get, yes. But here's the problem I have with that. I agree with you that it is mandatory under the regulation, at least, that the credits be restored unless he satisfies. And indeed, that's the way the regulation is worded. It says, shall be restored unless. But if he possessed pornography, that would be a good reason for saying one of the exceptions have been met. You're saying there was no evidence to support that. The prison authorities determined that the fact that he was a regular user of this computer that had all this pornography was enough. No. That's not in the record. If you look in one of the briefs, I cited every single piece of evidence that was introduced. I scanned the actual report in there. There was nothing on his computer involving pornography. Zero. I mean, as I say, for a trial lawyer, this is an unusual situation to see that. But there is zero, absolutely zero evidence that he possessed pornography. It's just that the investigating officer believed that because he sat next to this guy, he must be guilty, too. And I don't want to get into guilt by association, but bottom line, there is no evidence that he violated the rules. So your perspective, you're saying that what we need to decide is that there was no evidence, the regulation says he gets them back. No, that's not before the court. What's before the court is whether or not this subject matter comes within the protection of the due process clause. On remand, the district court would then determine whether or not there had been a violation, whether the prison authorities acted properly. Well, what's your response to the government's position that there is no requirement under, in other words, no violation of federal law, there's no requirement under AEDPA that what happened here gives your client automatic relief. It's a mere expectancy. It doesn't give him a right under AEDPA. This is not mere expectancy. When I read a statute that says you will get, the court shall give you the following But it's not a statute. It's the statute. I'm sorry, the regulation, regulation. Whereas the statute is permissive, not mandatory. True, but the regulation is not permissive. The regulation is mandatory, and in California, regulations have the force of statute. The legislature can change the regulations if it wants, but until the legislature acts, they have the force of statute, and the regulation says shall. Okay. I think we have your point. Any other questions? Okay. Thank you. Thank you very much for both of your arguments. The case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff